United States of America v. James B. Smith, Clause No. 18-11155. Is the appellant ready to proceed? Yes, Your Honor. You may. May it please the Court. My name is Brandon Beck and I represent James Smith, the appellant, here today. Your Honor, this case involves a common sense evaluation of the similarity between the conduct underlying Mr. Smith's California conviction and the generic offense of public intoxication. And based on this similarity, this Court should reverse and remand for resentencing. Your Honor, in United the proper inquiry is the actual conduct underlying the prior conviction, not the general nature of the crime. And based on this guidance, the facts of this case are important. Here's what we know from page 131 of the record. On May 7, 2011, deputies responded to a call of individuals armed with guns. The defendant was encountered in the area and was questioned. While speaking to the defendant, deputies observed signs that Mr. Smith was under the influence of a controlled substance. He admitted he had recently used methamphetamine and was taken into custody. Then on June 27, 2011, he pleaded guilty. The judge deferred judgment and ordered Mr. Smith to participate in drug court. Your Honor, Section 4A.1.2.C.2 of the U.S. Sentencing Guidelines Manual lists five factors to consider when weighing the similarity of two offenses. Before I get to the five factors specifically, I would like to comment on the general nature of the case law in this area. There's a small sea of cases comparing a statute to one of the offenses on the list here in the guidelines, but they exist kind of in a hierarchy. The two most detailed explanations and analyses are both in cases from this court, United States v. Hardeman in 1991 and United States v. Hernandez in 2011. There's a reason why this court's opinions have taken priority over other courts. That's because in United States v. Hardeman, this court was the first court to articulate the five factors that the Sentencing Commission ultimately adopted expressly in 2007 in Amendment 709. Before 2007, you see most courts just looking at the elements and then drawing an inference from that what the culpability is. But only this court has consistently applied the five factors and only has done so really in great detail in Hardeman in 1991 and Hernandez in 2011. So that's why I'll be probably referencing those cases the most. The first factor that the Sentencing Commission lists is a comparison of punishments imposed for the listed and unlisted offenses. I think this is the only factor that's treated categorically where you look at the range of punishments available from, in this case, the California legislature and then comparing that to the typical offense of public intoxication. In up to one year in county jail, based on my survey of public intoxication, that would be on the high end of the available range. The only state I could find that punishes public intoxication is the state of Georgia, which is also up to one year in prison. But I would note that if Mr. Smith committed this exact same conduct, standing on a street corner high on methamphetamine, unable to properly communicate with a police officer, if he had done so in the state of Texas, he could only be charged with one offense, and that is public intoxication. Now that said, based on the high range of this California offense, I would say this is the only factor that does, in fact, weigh in favor of the government. But I think I've made some observations in the briefing that at least does enough to not make this factor dispositive. What do you do about the distinction in that alcohol is not illegal per se, but drugs are? Well I would emphasize in response, Your Honor, the mistake many of the courts and other circuits have made is to treat public intoxication as an alcohol-specific statute. Public intoxication includes not only alcohol, but also controlled substances, and that's expressly stated in the language of the public intoxication from the Model Penal Code, from Black's Law Dictionary in the state of Texas. So I think it's a bit of a red herring to say, well, public intoxication is less culpable because it also includes alcohol, when the reverse is also true. It also includes controlled substances. And I also think that the conclusion that alcohol culpability somehow doesn't pose the same direct risk to other individuals is also misguided. The second factor that the Sentencing Commission put forth from Hardiman is the perceived seriousness of the offense as indicated by the level of punishment. Now as this Court made clear in Hernandez and in Hardiman, this is fact-specific, so we evaluate the actual punishment imposed in that case. Based on that, in this case, deferred adjudication, ordered to appear in drug court on page 131 of the record, the perceived seriousness by the judge is very, very low. I would contrast that to United States v. Hernandez, where this Court held that there's, in fact, no similarity between obstructing a highway and loitering. This Court observed, well, the defendant in the obstruction case had been sentenced to 150 days in jail, so that showed a higher level of seriousness. That's not something that we see here. Counsel, so the Ninth Circuit has, in the Martinez case from 1992, held, rejected this exact argument, right, that a conviction under this particular provision of the California Penal Code is similar to public intoxication. And I guess I have a two-part question. One is, are there any courts on the other side interpreting this provision of the California Penal Code? And assuming the answer to that is no, is there any court that has said that the use of methamphetamine is, quote, similar to loitering or vagrancy or getting a speeding ticket? No, Your Honor. So would we be the first court that would say that in order to agree with you? This would be the first court to hold that this California statute, so I'll answer your question specifically first, to hold that this California statute is similar to, under these factors, public intoxication. I would comment, however, that this would be the first court to consider all five factors when making that evaluation. But in order to do the first thing you said, that is to say it's similar to public intoxication, wouldn't we also, I mean, it's a list, right, so wouldn't we have to, in subsection C, would we also have to say it's similar to hitchhiking, fishing game violations, truancy, et cetera? No, Your Honor. Every case listed in all of the briefing that I've read always do a one-to-one comparison. I know the government has discussed the canon of construction, nos qui tour associis, which says that you evaluate something based on its companions. That's not necessary here because we don't have an ambiguity in this particular provision. You would only reach for that if we don't know how to figure out what public intoxication is. But we know how to. This court has held that when trying to find the generic version of an offense, you look to the model penal code, you look to Black's Law Dictionary, and at times this court has substituted the Texas version of the offense in place of the generic. But we don't need to worry about fish and game violations to know what public intoxication means. And I haven't seen a court that really approaches it that way. So I think that's going a bit in the wrong direction, and I'm criticizing the government, not you, for your question. Under the California Penal Code provision that applies to public intoxication, that is the specific one, 647F, it looks like there's only civil penalties associated with that, like civil detention for 72 hours. Can you be incarcerated for violating 647F? Yes, you can, Your Honor. If you look at it, there's a penalty provision, and what it says is, if you're encountered by an officer, the officer shall take you to treatment for 72 hours. But then it says, or punishment up to six months in jail plus a $1,000 fine. So there's an alternative there. And I don't have the list for that. I wrote that at the bottom here. So there is an or under certain circumstances where you may just have to, and I'm not sure what those are, but there is an alternative. That was my reading of it. Now, I do want to come back to your question a bit, Judge Oldham. So there are three cases that have done this comparison between a drug offense and public intoxication. They're all in the government's brief, also in my brief in part, Martinez, Roy, and Locklear. These cases, particularly Martinez, was criticized by this court in United States v. Hardiman for doing a truncated version of the analysis. And if I were to summarize those three cases, they all say the same thing. This includes drugs, not just alcohol, therefore it's more culpable. And the analysis is slim, and the here's what I mean by that when we look to culpability. The culpability involved in your typical public intoxication statute is higher than what's involved in this California statute because your typical public intoxication statute poses as an element a direct risk to another individual. Here's what I mean by that. In California Penal Code 647F, the one you were referencing, Judge Oldham, one of the things that you have to do to commit this crime is be unable to exercise care for your safety or the safety of others, or interfere with or obstruct or prevent the free use of a street, sidewalk, or other public way. The guidance here is United States v. Lamb before this court where this court held that shoplifting is worse than, not similar to, passing a bad check because there's an increased risk of confrontation in shoplifting that you don't have with passing a bad check. The same is true with all of these generic versions of the public intoxication statute where you have to be not just drunk or high, you have to also be causing trouble to commit that statute. But if you look at the California offense that Mr. Smith was convicted under, you don't have to be causing any trouble. In fact, you can be sitting in your own home. All it says is a person shall not use or be under the influence of any controlled substance. I would like to emphasize this, Judge Oldham. You referred to 647F as the statute that Mr. Smith was convicted under, 11550, is not a possession statute. What the State of California has done is chosen uniquely to bifurcate its public intoxication statute. But you just said that 11550 doesn't say anything about being in a public space. It just says we're prohibiting controlled substance use. That's right. So they're both public intoxication. One does present more culpability and risk than the other, however. I'm sorry, I thought we just said that 11550 is not public intoxication. It's just intoxication by use of controlled substances, whereas the other one literally says public place under the influence. That's right. So I take your point, Your Honor, that you can be at home, therefore it may not be considered public. It's better than public intoxication in that sense because it presents less risk. And I think it would be a mistake to say, well, it's not similar to this list of petty offenses because it requires less culpability than this list. All the cases that I've read that reject a similarity analysis have concluded, well, it presents more risk, more culpability, different elements, worse elements. In this case, the elements are the same or better. The risk, the direct risk to another individual is the same or better. But it does look like, I'm curious about your explanation of the six months in jail because what I see in 647, it's actually in G, which talks about a violation of subsection F, is that a person has been placed in civil protective custody under subsection F shall not thereafter be subject to any criminal prosecution based on the facts giving rise to the placement that is the public intoxication. So if there's, perhaps there's a different version of the law that I have and the one that I can see on Westlaw says no, there's no criminal prosecution for that petty offense. So it's a lesser offense than using controlled substances. In your honor, I don't have the full statute in front of me. If you would at least permit me to do a supplemental brief just on that particular question, it would be about two sentences. And if I'm wrong about it, I'll say that in the supplemental brief. So. That's fine. And for these reasons, your honor, we ask this court to reverse and remand. All right. Thank you, counsel. Mr. Magliola. Thank you, Judge Graves, and may it please the court. Joe Magliola for the United States. Mr. Smith has not nearly met his burden to show that the district court erred by following the Fourth and Ninth Circuits in counting his methamphetamine-related conviction towards his criminal history score. As a result, this court should not create a circuit split by treating a California statute that prohibits the public or private use of methamphetamine, of heroin, of cocaine, as being somehow akin to public intoxication, which the sentencing guidelines group with less serious offenses like fish and game violations, truancy, and speeding. Now, before I get to my presentation, I would like to clear up, I hope, something concerning Judge Oldham's question on California Penal Code Section 647. Because, Judge Oldham, you are correct that under certain circumstances, a police officer in her own discretion may choose, rather than taking someone who is intoxicated to the point where they can't control themselves, to civil commitment. That said, there is another subsection below that that sort of circumscribes that ability, and it has to do with whether or not someone is under the influence of drugs versus being under the influence of alcohol. So, an officer does not have the discretion to take that sort of person into a civil custody situation and not prosecute that particular person. That said, in a moment, I hope to get to why the two offenses and their punishments diverge significantly, but before I do that, I'd like to talk just a little about the way the ones that are counted, so long as there are minimum punishment thresholds, are, I think, pretty clearly more serious than the ones listed in C2. They involve things like disorderly conduct, disturbing the peace, gambling, prostitution, trespassing. Now, the purpose of talking about the placement of public intoxication among the less serious offenses was done in order to give a sense of what the drafters of the sentencing guidelines believed the seriousness of public intoxication to be. It is among offenses that are relatively unserious. Local ordinance violations, hitchhiking, truancy, moving violations. So by doing that, and the drafters could have listed something about controlled substances within that C2 list, and they didn't do so. And I think that was a deliberate choice. And when it comes to defining public intoxication, I disagree with my friend that it is an easy task. It is not an easy task. There are a huge number of definitions across jurisdictions, across secondary sources. And the only two common features that I have taken away from all of those sources are that a person must be in public and that they must be under the influence of at least alcohol. And by placing public intoxication among these less serious offenses, I take from it that the sentencing guideline drafters meant it to have its plain and ordinary meaning of being only under the influence of something more aggravated than that. But that's not what the statutes always say, is it? I mean, they don't draw any distinction between public intoxication from alcohol versus public intoxication from some kind of controlled substance. Some do and some don't, Your Honor. All right. With respect to the common sense factors, I believe all five cut in favor of our argument in this situation. And I'd like to, before getting to that, talk about just briefly what the Ninth Circuit and Fourth Circuits did. Because I also disagree with my friend that the Ninth Circuit and Martinez didn't go through the common sense factors. They did go through a number of the common sense factors, not all of them. But they compared the statute to the California public intoxication statute. They noted that public intoxication is not widely criminalized, which I believe is generally the case. They noted that the conduct underlying the events in Mr. Martinez's case, which was the use of heroin, is much more widely culpable. It's widely criminalized. And that is drawn in contrast to something like the use of alcohol, which is otherwise legal, which is the same conclusion that the Fourth Circuit reached because the substance at issue there, cocaine, is always criminalized while something like alcohol is not. But turning to the common sense factors, I'd like to talk to you about the first two, which is a comparison of the punishments and a perceived seriousness of the offense. When it comes to the punishments, this is a very bad fact for Mr. Smith, because the punishments with respect to the California statute are much more serious than any punishment for any public intoxication-only offense I've seen anywhere in the country. I'll talk about Georgia in a moment. But just when it comes to the California statute for which Mr. Smith was convicted, that carries a maximum sentence of 365 days in jail versus the California public intoxication, the maximum of which is 180 days. It carries a potential five-year term of probation, whereas the California public intoxication statute has no similar term of probation. And it also has a potential mandatory minimum sentence. If a person, for example, has been convicted of this offense more than two times in a seven-year time span, and then upon a third conviction they refuse drug treatment, a judge is capable of giving that person a 180-day mandatory minimum sentence. So in California, at the very least, they take the statute for which Mr. Smith was convicted much more seriously than 647F. And the distinction, I think, is even starker when you compare the punishments to public intoxication or their analogs in other states. The most serious punishment I've seen in any state for something that is only public intoxication related is 180 days, and that's in Indiana. In a place like Iowa, it's 30 days. In a place like Texas, it is a $500 fine. And then there's the rash of states that don't criminalize public intoxication whatsoever. I think there's at least a dozen of which I'm aware. Now, my friend talked about the Georgia statute, but I don't think the Georgia statute can be fairly characterized as being public intoxication because it goes more into the realm of being disorderly conduct. To be convicted under that Georgia statute, someone has to both be intoxicated and act in a way that's boisterous or loud or aggravating to others around them, which I believe takes it into the realm of disorderly conduct, which is something that this court counts in a criminal history score so long as a minimum punishment threshold has been met. With respect to the third element of the common sense test, a comparison of the elements, again, this is a situation where this particular offense criminalizes activities wherever they occur. If somebody is using methamphetamine in public or in private, it criminalizes that activity within a person's home. Public intoxication, of course, requires somebody to be out in the open to be convicted for that particular crime. And so I think what we're dealing with here are just simply two different offenses. And as a result, this is another element that cuts against Mr. Smith's contention. Now, as far as the relative culpability of the offense and the predictive value it has for somebody's criminal future, well, in terms of the perceived seriousness, I think the Seventh Circuit put it best, even though it was, with respect to marijuana, a less serious substance than methamphetamine, and it indicated that to obtain marijuana, essentially, someone is engaging in more culpable criminal conduct than somebody who is merely overindulging in an otherwise legal substance like alcohol. And so here, to obtain methamphetamine, a person has to put themselves inside the drug economy. They have to fund the drug economy. It is much more culpable conduct than simply overindulging in something like alcohol, which you can legally buy all over the place. But you deal with that with a possession charge, don't you? Well, it's possible, Your Honor, although in a case like Mr. Smith's, he did not have possession of the methamphetamine at the time he was arrested. He was just under the influence of the methamphetamine at that time. And finally, the fifth common sense factor also cuts against Mr. Smith because after he was convicted for this particular offense in California, he was engaged in a wide variety of criminal conduct even before he got back to federal court. He committed a number of weapons offenses and drug offenses, and that was before the incident 922G that got him back into federal court. And so taken together, all common sense factors weigh against Mr. Smith's argument. And I would like to just say that if Mr. Smith had his way, the outcome would be such that if somebody were convicted of a trespassing offense and they received a one-year term of probation and no incarceration whatsoever, they would receive a criminal history point. But if somebody like Mr. Smith broke the law in California again under 11-055 and they took methamphetamine and they got a one-year sentence of incarceration, that person would receive no criminal history points. I do not believe by placing public intoxication among crimes like fish and game violations and local ordinance violations and speeding and truancy, the drafters of these sentencing guidelines had in mind that particular outcome. The court has no further questions. I will cede the balance of my time and ask this court to affirm the district court's sentence. Thank you, counsel. Thank you, Your Honor. Rebuttal. May it please the court. Your Honor, four short points on rebuttal. The way the government defines public intoxication is alcohol plus in public plus no other conduct. Under that definition, the model penal code's definition of public intoxication would not be public intoxication. Black's Law dictionary definition would not be public intoxication. The Texas definition would not be public intoxication. It's far too narrow. I've never seen a public intoxication statute that says alcohol plus public plus no other conduct, perhaps at common law. I'm not sure. But that's very, very narrow, narrower than generic public intoxication. Second, as to Martinez, the government said that Martinez used all the factors or most of the factors. This court criticized Martinez in United States v. Hardeman for having too restrictive of an approach, saying, we conclude that the sentencing courts should not be restricted either by the method, by either method suggested by the parties or by the approach adopted by the majority in Martinez, which simply concluded in one paragraph, this includes drugs, therefore more culpable. Third, I want to talk about culpability. This court consistently in United States v. Lamb, United States v. Sanchez-Cortez, Hernandez, and Hardeman, four cases, has assessed culpability based on the direct risk posed to the public. This court further said, and I think this is getting lost, that this is a fact-specific inquiry. So what is the risk to the public? Well, we look at what Mr. Smith actually did. He stood on the street corner high on something, which he later admitted to be methamphetamine. And the point I want to make is this. You know, I travel a lot to major cities, and I walk down the street past a lot of people who are on something. And I ask myself the question, what raises my blood pressure more, walking past someone who's high on something, minding their own business, or walking past someone who's drunk on alcohol, causing trouble? And the level of culpability that James Smith exhibited here is very, very low based on the actual facts on page 131. Fourth, the last factor dealing with future conduct or predictability. I think the way that the sentencing commission chose the language, the degree to which the commission indicates a likelihood of recurring future conduct, narrows the focus, and it's not enough just to say, well, now we know he did more things. Therefore, we know in the past that that was predictive of future conduct. Certainly, intoxication offenses will be predictive of future conduct. A person who's addicted to alcohol can carry that addiction their entire life. Mr. Smith has dealt with narcotics addiction for his adult life, starting when he was 18 years old. And the same is true for public intoxication. So high on the street corner on drugs, drunk on the street corner causing trouble, I don't see a huge difference between the two. And if there is a difference, Mr. Smith posed less of a risk to the harm of others. I would like to add a fifth point since I have a little bit more time. The government has characterized this as at least related to the buying and selling of narcotics. The obvious inference there, the common sense inference is if you're going to do drugs, you've got to get them from somewhere. We don't have any evidence on page 131 of how that happened. We do have a little bit of evidence a few pages later in the pre-sentence report, dealing with other offenses that were not charged. The same year, also when he was 18 years old, there was another incident where he called the police fearful that someone was going to harm him. When the police encountered him, they didn't see anyone else. He seemed to be out of it, and he told police that he was high on methamphetamine and that a person he knew had injected him. So based on that, if that's true, it was a drug buddy situation, not being a drug dealer, being a drug buyer in the way that poses the risk, perhaps that the government is suggesting. So it's for these reasons that at least four out of the five weigh in favor of Mr. Smith that we ask this court to reverse and remand for resentencing. Thank you, Your Honors.